**In re George David GORDON, Jr., Debtor.**

**No. 11–10045–M.**

United States Bankruptcy Court, N.D. Oklahoma.

Jan. 4, 2013.

Patrick J. Malloy, III, Tulsa, OK, Richard M. Paul, III, Stueve Siegel Hanson, LLP, Kansas City, MO, for Plaintiff.

Charles Greenough, Gerald L. Hilsher, McAfee & Taft, Tulsa, OK, for Defendant.

## ORDER REGARDING TRUSTEE'S MOTION FOR SANCTIONS

TERRENCE L. MICHAEL, Chief Judge.

Litigation is often a nasty business. It is not hard to understand why. Litigation exists because someone wants something, and they want it from the other side. Things get nastier when allegations of lawyer misconduct are added to the mix. The battle becomes personal. The parties focus their energies upon the personal accusations instead of the matter at hand. Eventually they ask the Court to do the same, at considerable time and expense for all involved.

In the present case, the central issue is whether to approve a compromise. On one side we have the parties to the compromise, the bankruptcy trustee and the United States of America. On the other side we have a bank. It took over five months to move the matter from filing to

evidentiary hearing. In between, there were discovery disputes, motions in limine, and more responses and counter-responses to pleadings than the Court could shake a stick at. Finally, there was a motion for sanctions. The bankruptcy trustee alleges that the bank and its counsel have impugned his character, and acted in a manner so egregious as to warrant some manner of punishment. The Court did not require the bank or its counsel to respond to the motion for sanctions, as enough time and effort has already been devoted to the personal battles between them. The trustee has failed to follow the applicable Federal Rules of Civil Procedure, and has failed to convince the Court that cause exists to ignore those rules. As a result, his request for sanctions is denied.[1]

### Jurisdiction

The Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. § 1334(b).[2] Reference to the Court of the bankruptcy case is proper pursuant to 28 U.S.C. § 157(a). The approval of a compromise constitutes a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A).

### Findings of Fact

George David Gordon, Jr. ("Debtor") filed a petition for Chapter 7 relief on January 7, 2011. Patrick J. Malloy III ("Malloy" or "Trustee") has been appointed as the trustee in this case. Malloy has filed a preliminary report indicating that assets may be available for distribution to creditors in this case, and a deadline for filing claims has been established. Commerce Bank ("Commerce" or "Bank") has filed a proof of claim in the amount of $470,200, based upon a guaranty of indebtedness executed by Gordon.[3]

The history of this case, including the genesis of the Compromise Agreement (the "CA") at the core of the dispute between Malloy and the Bank and its counsel, has been fully discussed in the Memorandum Opinion regarding approval of that compromise, and need not be repeated here.[4] The current dispute was ignited by statements made by counsel for the Bank in one of the pleadings it filed in support of a motion to compel discovery from the Trustee:

> Commerce submits that the responses of the Trustee to the discovery should also be examined in light of the Trustee's recent briefing both on this Motion and on the Adversary Proceeding which Commerce has filed, as well as the responses of the United States to the discovery of Commerce Bank. Taken together, these briefs and discovery response reveal a pattern by the Trustee and the United States. Both the Trustee and the United States seek to avoid any meaningful examination of the legal validity of the litigation plan they have concocted to bring, essentially as a class action, a series of baseless claims against Commerce Bank—because they know that a careful examination of this process will show the several fatal procedural flaws that prevent these claims from being asserted. Only by sweeping these issues under the rug will the Trustee be able to play his end game strategy of asserting wild claims against Commerce Bank in hopes of

---

1. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52, which are made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 9014.

2. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

3. *Claim No. 1–1.*

4. *See Docket No. 331.*

coercing Commerce Bank into a settlement (which the Trustee hopes will generate a significant contingency fee for himself).[5]

The Court held hearings with respect to this motion to compel on September 25, 2012. At the conclusion of that hearing, the Court advised the parties as follows:

> I appreciate the civility today, but there's one thing in these pleadings—and I'm not asking for a response, but I feel compelled I have to say something—the pleadings filed by Commerce Bank make what I consider to be very serious allegations and accusations against the Trustee and the United States. The Trustee's—it suggested that the Trustee is churning up litigation, filing baseless litigation, and pursuing matters in order to collect fees for himself. That's a very serious allegation.
>
> And to the parties who authored it, if you have evidence of that, you're talking to the wrong person. Ms. Vance is back there. She supervises the trustees. Her boss is in Wichita and you can find him. The U.S. Attorney is available. The State Bar is available. If these things are being pled as a litigation tactic, I remind you all that your job is to persuade me and that doesn't do it. I have no use for that type of stuff. If you've got a real claim, take it to the people who police those people. Keep it out of here.[6]

On October 3, 2012, the Court issued a bench ruling denying the motion to compel. In the course of that ruling, the Court reemphasized its position:

Counsel for Commerce has accused Malloy of abandoning his fiduciary duties as Trustee to further his own economic self-interest and has accused the United States of America and its counsel of being his willing accomplices. The court does not take some assertions lightly. If Commerce and/or its counsel have evidence of such grossly improper conduct, they have a duty to inform the United States Trustee and, possibly, the State Bar of Oklahoma. The court expects them to live up to that duty. Such personal and vitriolic accusations have no place as part of a litigation strategy, at least before this Judge.[7]

The Court expected this to be the last it would hear regarding these allegations.

On October 9, 2012, Gerald Hilsher, one of the counsel for Commerce ("Hilsher") wrote a letter to Katherine M. Vance ("Vance"), the Assistant United States Trustee for the Northern District of Oklahoma (the "Vance letter").[8] In the Vance letter, Hilsher reiterated the statements made in the Bank's motion to compel. In addition, Hilsher alleged that any claims made by Malloy against Commerce were without merit and were made in bad faith. Hilsher also accused Malloy of acting in violation of Oklahoma statutes, and of soliciting clients in violation of the Oklahoma Rules of Professional Conduct. Hilsher asked Vance to review Malloy's actions, apparently in the hopes that Vance would instruct Malloy to cease any and all efforts against Commerce. At a minimum, Hilsher hoped that Vance would consider whether she "wishe[d] to continue to sup-

---

**5.** *Docket No. 260 at 2.*

**6.** *Transcript of Proceedings Held on September 25, 2012, Docket No. 278,* Page 17, line 21 through Page 18, line 14.

**7.** *Transcript of Proceedings Held on October 3, 2012, Docket No. 288,* Page 8, lines 7–17.

**8.** *Docket No. 290, Exh. "C,"* at 60.

port the Coordination Agreement or seek policy guidance from the U.S. Trustee." [9]

On the same day, a similar letter was sent to Danny C. Williams ("Williams"), the acting United States Attorney for the Northern District of Oklahoma (the "Williams letter").[10] This letter, authored by John D. Russell, counsel for Bruce Humphrey, an officer of Commerce, was reviewed and joined in by Hilsher.[11] In addition to attacking the conduct of Malloy, Commerce also raised concerns regarding the conduct of Assistant United States Attorneys Catherine Depew ("Depew") and Wyn Dee Baker ("Baker"), accusing them of improper and unethical conduct motivated by the desire for personal aggrandizement, as demonstrated by the following excerpts from the Williams letter:

> Counsel for Humphrey and Commerce request a meeting with you to discuss very serious concerns we have regarding the legality and ethics of a proposed Coordination Agreement between the United States Attorney's Office for the Northern District of Oklahoma and Patrick J. Malloy, the appointed Trustee of the G. David Gordon, Jr. bankruptcy case. After carefully analyzing the underlying facts, we do not believe the Coordination Agreement is proper under the laws or regulations of the United States or the State of Oklahoma. More important, we believe the Coordination Agreement may violate the Oklahoma Bar Association's Rules of Professional Conduct. We are setting forth in this letter Humphrey and Commerce's position on these issues, and we would like to discuss them further in a meeting with you and Assistant United States

Attorneys Catherine Depew and Wyn Dee Baker. The United States Bankruptcy Court for the Northern District of Oklahoma has scheduled a hearing on approval of the Coordination Agreement for October 24 and 25, 2012, and we respectfully request that a meeting take place before the hearing.

> * * *

> In raising these questions, we are well aware that your initial response may be that in asking such questions, Humphrey and Commerce Bank are simply reacting in defense of their targeted status. We understand that. We would hope, however, that you would also understand that all parties to this novel procedural road are guided by their own selfinterests [sic]: (i) Humphrey and Commerce Bank do not want to be involved in protracted litigation; (ii) the Trustee seeks monetary recovery for creditors of the Gordon Estate and for his work as a contingent fee attorney in the pursuit of claims against Humphrey and Commerce; and (iii) AUSA Catherine Depew is seeking monetary recovery for victims of Gordon's fraud in a case where all other avenues appear to have been exhausted which, if successful, would enure to her reputation. The fact that Humphrey and Commerce have a reason and a desire to have you hear our concerns should not cause you to ignore our concerns out of hand.

> * * *

> Humphrey and Commerce ask you to put a stop to the improper and unethical practice that is being continued by this extraordinary forfeiture/petition in remission process. We believe this was

---

9. *Id. at 65.*

10. *Docket No. 290, Exh. "D," at 66.*

11. For purposes of its ruling, and only for purposes of its ruling, the Court presumes that: (1) Hilsher authored the Vance letter; and (2) Hilsher joined in the Williams letter.

designed entirely to provide a vehicle to bring a lawsuit that would otherwise not be brought by anyone. As you know, the simple threat of litigation and potential recovery often leads to what is effectively an extortion payment to avoid the hazards of litigation. The matter is only worse here because the means by which these victims get to the courthouse through the U.S. Attorney's office and the Trustee is not sanctioned by statute or regulations, is improper and may be unethical. We ask you to investigate and stop this process.[12]

For purposes of this ruling, the Court finds that the purpose of the Williams letter was to persuade Williams to order Depew and Baker to cease any and all attempts to gain bankruptcy court approval of the CA.

The efforts of Commerce, Hilsher, and Russell failed. Vance appeared at the October 25, 2012, hearing and actively voiced her support for the CA. Williams apparently did not instruct either Depew or Baker to stop their efforts to obtain approval of the CA. Depew appeared at the hearing and argued in support of the CA.[13]

On October 16, 2012, Malloy filed his motion for sanctions against Commerce and its counsel (the "Sanctions Motion").[14] In the Sanctions Motion, Malloy alleged that:

1. The conduct of Commerce and its counsel in filing any pleadings in opposition to the CA was undertaken in bad faith and for an improper purpose;

2. The conduct of Commerce and its counsel in seeking to obtain discovery and compel production of documents was undertaken in bad faith and for an improper purpose; and

3. The conduct of Commerce and its counsel in authoring the Vance letter and joining in the Williams letter was undertaken in bad faith and for an improper purpose.

Malloy claims that the conduct of Commerce and its counsel is an insult to the integrity of the Court, and asks the Court to fashion an "appropriate sanction" in response. Malloy does not share with the Court his idea of what an "appropriate sanction" might be.

To the extent the Conclusions of Law contain any items that should more appropriately be considered Findings of Fact, they are incorporated herein by this reference.

## Conclusions of Law

█ In January of 2003, this judge composed his "Ten Tips for Effective Brief Writing" and made them available on the Court's website. One tip bears repeating here:

### TIP NUMBER NINE

*Leave the venom at home.* I have yet to meet a judge who enjoys reading a brief filled with hostility toward and/or personal attacks upon the other side. Whether you like (or get along well with) your opposition has little to do with the merits of a particular case. The most effective attack you can make is to persuade (there's that word again) me that the other side is wrong. Remember, if you win, they lose. Isn't that enough? Words like these:

ridiculous

scurrilous

---

**12.** *Docket No. 290* at 66, 67, and 74.

**13.** Baker was also present at the hearing but did not enter a formal appearance.

**14.** *Docket No. 290.*

ludicrous

preposterous

blatant

self-serving (come on, *all* evidence and argument is self-serving)

nonsensical

do not help you. Don't use them.[15]

Of all the personal attacks that can be placed in a brief, the least persuasive (at least to this judge) is the allegation that opposing counsel has engaged in unethical conduct. Such allegations *have absolutely no place* in a pleading filed in this Court. Counsel who are aware of conduct that violates the Oklahoma Rules of Professional Conduct have an ethical duty to report it to the proper authorities, whether it be the Oklahoma Bar Association or the United States Trustee or someone else.[16] The United States Bankruptcy Court for the Northern District of Oklahoma is not a substitute for these institutions. It is a court, and largely a court of economics at that. With all due credit to Sergeant Joe Friday, this judge is interested in "just the facts." [17] And the law.

### The Objection to the CA

Malloy alleges that Commerce should be sanctioned for filing any pleading in opposition to the CA because Commerce was motivated by its own self interest as a potential target of litigation, and not by its status as an unsecured creditor. Malloy contends that each and every act taken by Commerce in opposition to the CA was abusive, unwarranted, and undertaken in bad faith. He wants the Court to put a stop to it.

■ An award of sanctions for the filing of an improper pleading in a bankruptcy case is ordinarily governed by Federal Rule of Bankruptcy Procedure 9011 ("Rule 9011"). Rule 9011(c)(1)(A) provides as follows:

A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.[18]

The rule requires that before a motion for sanctions is filed, it must be served on the offending party in order to advise the offending party of the offending pleading, thus providing the offending party with an opportunity to mend its ways prior to

---

**15.** http://www.oknb.uscourts.gov/JM/policies-and-procedures (Ten Tips for Effective Brief Writing).

**16.** Okla. Stat. tit. 5, Appendix 3–A, § Rule 8.3(a).

**17.** The line "just the facts, ma'am" has long been attributed to Sergeant Joe Friday, the erstwhile detective portrayed by actor Jack Webb for years on the radio and television program entitled "Dragnet." Interestingly, Sgt. Friday never uttered this exact phrase. Snauffer, Douglas, *Crime Television, The Praeger Television Collection.* Greenwood Publishing Group, 2006. ISBN 978–0275988074.

**18.** Fed. R. Bankr.P. 9011(c)(1)(A).

bringing the Court into the fray.[19] The requirements that a motion for sanctions be served upon a party, and that 21 days elapse between the service of the motion for sanctions and its filing are mandatory under Rule 9011.[20]

■ The Sanctions Motion makes no mention of Rule 9011, nor does it state that Malloy provided Commerce and/or its counsel with an opportunity to withdraw the offending pleadings or allegations. As a result, the Court finds that Malloy is not entitled to an award of sanctions under Rule 9011. To the extent the Sanctions Motion may be construed as seeking relief under that section, it is denied.

■ Malloy bases the Sanctions Motion upon § 105(a) of the Bankruptcy Code, which allows a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." [21] Malloy relies upon a decision of the United States Court of Appeals for the Tenth Circuit in support of his position that bankruptcy courts have inherent power under § 105(a) to sanction attorney misconduct.[22] Interestingly, the decision relied upon by Malloy includes the following statements:

> In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), the Supreme Court recognized the inherent power of a federal district court to sanction conduct abusive of the judicial process. The Supreme Court rejected arguments that specific federal statutes and the various sanctioning provisions of the federal rules reflect legis-

lative intent to displace the court's inherent powers. It held that

> when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the Court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.

*Id.* at 50, 111 S.Ct. at 2135. Justice Scalia's dissenting opinion may be read to imply that the Court's holding only applies to Article III courts. *See id.* at 58, 111 S.Ct. at 2139–40. We believe however, that the majority opinion does not limit inherent power to Article III courts; it says:

> It has long been understood that "[c]ertain implied powers must necessarily result to our *Courts of justice* from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *United States v. Hudson* [11 U.S. 32], 7 Cranch 32, 34 [3 L.Ed. 259] (1812); see also *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764 [100 S.Ct. 2455, 2463, 65 L.Ed.2d 488] (1980) (citing *Hudson* ). For this reason, *"Courts of justice* are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn* [19

---

19. Service must be made under Fed. R. Bankr.P. 7004.

20. *Cadle Co. v. Pratt (In re Pratt),* 524 F.3d 580, 586 (5th Cir.2008) (applying Rule 9011). *See also Roth v. Green,* 466 F.3d 1179, 1191–1192 (10th Cir.2006) (reaching same conclusion under Fed.R.Civ.P. 11).

21. § 105(a).

22. *In re Courtesy Inns, Ltd.,* 40 F.3d 1084, 1089 (10th Cir.1994) (hereafter *"Courtesy Inns"*).

U.S. 204], 6 Wheat. 204, 227 [5 L.Ed. 242] (1821).

*Id.* at 43, 111 S.Ct. at 2132 (emphasis added).

\* \* \*

We believe, and hold, that § 105 intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in *Chambers*.[23]

Under the rationale set forth in *Courtesy Inns*, a bankruptcy court's power under § 105(a) is limited by the principles outlined by the United States Supreme Court in *Chambers*. In *Chambers*, the United States Supreme Court stated that if bad-faith conduct can be fully addressed by statute or rule, resort to equitable powers is neither necessary nor permissible. Such pronouncements are binding upon this Court. Moreover, they are legally sound and proper.

■ Malloy claims that Commerce and its counsel filed pleadings that should never have been filed. The Court concludes that Rule 9011 is more than an adequate tool to deal with this conduct. Malloy is not entitled to any relief under this rule due to his own failure to comply with Rule 9011. There is no reason for the Court to fashion a further remedy. Section 105(a) exists to protect the integrity of the bankruptcy process, and not to render the Federal Rules of Bankruptcy Procedure superfluous.

### The Motion to Compel

■ Malloy also contends that Commerce and its counsel should be sanctioned for filing a motion to compel discovery. Malloy has filed a separate motion for his fees and costs incurred with respect to this motion to compel.[24] That motion relies upon Federal Rule of Civil Procedure 37(a)(5) and Federal Rule of Bankruptcy Procedure 7037.[25] The Court has issued its order scheduling a hearing regarding the motion for fees and costs related to the motion to compel. That matter will be heard on February 5, 2013.

There is no reason for the Court to issue any additional order or sanctions with respect to the motion to compel. The Federal Rules of Civil and Bankruptcy Procedure provide an adequate mechanism for dealing with discovery disputes, and the Court will apply those rules as it resolves the motion to compel. Under the principles outlined in *Courtesy Inns* and *Chambers*, the Court's actions are sufficient.

### The Vance Letter and the Williams Letter

■ Finally, Malloy asks the Court to sanction Commerce and/or its counsel for sending the Vance letter to Vance and for assenting to the Williams letter when it was sent to Williams. Malloy claims the letters are nothing but a reprehensible litigation tactic. Malloy again relies upon § 105(a) in support of his request.

---

**23.** *Id.* (emphasis added).

**24.** *Docket No. 292.*

**25.** Federal Rule of Civil Procedure 37(a)(5)(B) reads as follows:

(5) Payment of Expenses; Protective Orders.

(B) *If the Motion Is Denied.* If the motion [to compel discovery] is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both

to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(a)(5)(B). Fed. R. Bankr.P. 7037, made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014, renders Fed.R.Civ.P. 37 applicable to the motion to approve the CA.

The Court appreciates Malloy's outrage. In the letters, he is accused of breaching his fiduciary duty to creditors and forsaking his obligations to act in the best interests of the bankruptcy estate, all for his own personal gain. He is accused of soliciting clients in violation of the Oklahoma Rules of Professional Conduct, and of making unfounded allegations against Commerce without due regard for the facts or the law. In short, Malloy has been accused of conduct that would threaten his ability to effectively continue to appear before this Court as a trustee and an attorney.

To the extent Commerce and its counsel made such allegations in pleadings filed in this case, the Court's response has been simple and swift. Throughout this case, the Court has given *absolutely no weight* to Commerce's claims of improper conduct. Commerce and its attorneys were instructed, in no uncertain terms, to take any such complaints to the appropriate authorities. They have done so by writing the Vance letter and the Williams letter.[26] The question is what, if anything, is the Court to do about it.

After careful consideration, the Court declines to sanction Commerce or its counsel as a result of the Vance letter or the Williams letter. The Court has several reasons for its decision. The Court told Commerce that it would not listen to such allegations, and that, if Commerce or its counsel believed that improper conduct had taken place, to report the conduct to the proper authorities. After hearing this admonition, Commerce made no further allegations to the Court that Malloy was acting improperly. The Court has no doubt that Commerce would argue that its involvement in the Vance letter and the Williams letter was an attempt to follow the Court's instructions.[27] It is a bit difficult to punish someone for doing what you told them to do.

The allegations contained in the Vance letter and the Williams letter were not made to the Court. They were made to Vance and to Williams. The only reason the Court is aware of the allegations in those letters, and the only reason the letters are available for public consumption, is because Malloy chose to attach them to the Sanctions Motion. The extent to which any court, including a bankruptcy court, should police conduct outside of a case is problematic.[28] Rule 9011 does not come into play, as neither the Vance letter nor the Williams letter are a pleading. If Malloy believes that either the Vance letter or the Williams letter give rise to a claim or cause of action against Commerce or its counsel, he is free to bring those claims before the proper tribunal.

Let there be no mistake. This Court is *NOT* ruling on the issue of whether Commerce was justified in issuing the Vance letter or supporting the Williams letter. The Court makes no finding as to whether the letters were the result of good and true intentions, or a mere litigation tactic issued in the hopes that Vance and/or Williams would put a stop to the CA. The Court is not finding that Malloy has no claim against Commerce or its counsel as a result of the letters. Those matters are left to another day and another court should Malloy decide to pursue them.

**26.** The Court has no idea whether Commerce or its counsel has made any complaint against Malloy to the Oklahoma Bar Association.

**27.** The Court offers no opinion in this regard.

**28.** The potential limitations upon the jurisdiction of a bankruptcy court are well-publicized and somewhat nebulous. *See Stern v. Marshall,* —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) and its progeny.

For each and every reason set forth above,

IT IS HEREBY ORDERED that the Trustee's Motion for Sanctions and Costs Against Commerce Bank and Its Counsel, filed by Patrick J. Malloy III, Trustee, at Docket No. 290, be, and the same hereby is, denied without prejudice.